

# THE ATTORNEY GENERAL
## OF TEXAS
### AUSTIN, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

FAGAN DICKSON
FIRST ASSISTANT

September 4, 1948

Hon. D. A. Davidson, Director
Live Stock Sanitary Commission
Fort Worth, Texas

Opinion No. V-676.

Re: The validity of Article
1525b, Section 6, Vernon's
Penal Code, authorizing
the issuance of search war-
rants to peace officers ac-
companying veterinarians
employed by the Live Stock
Sanitary Commission in ad-
ministering the provisions
of the statute.

Dear Sir:

You have inquired as to the validity of Arti-
cle 1525b, Section 6, Vernon's Penal Code, which pro-
vides authority for obtaining a search warrant by a
peace officer when he shall accompany a veterinarian
employed by the Live Stock Sanitary Commission in the
performance of any duty authorized under said statute.
That statute provides that in the event a search war-
rant is obtained under that section, such search war-
rant shall authorize <u>entry and reentry for a period
of thirty days after its issuance</u>.

We set out Section 6 of Article 1525b, V.P.C.,
as follows:

"The Chief Veterinarian of the Live
Stock Sanitary Commission and all other
veterinarians employed by said Commission,
including members of said Commission, are
hereby authorized to enter any public or
private property for the exercise of any
authority or performance of any duty au-
thorized under this Act. If said per-
son desires to be accompanied by a peace
officer the said person may apply to any

magistrate in the County wherein said property is located for the issuance of a search warrant, and it shall be the duty of the said magistrate to issue the same, but no search warrant shall issue without describing as near as may be the premise or other place to be entered; nor without probable cause, supported by oath or affirmation. It shall not be necessary to describe said premises or place by field notes or metes and bounds, or other measures, but it will be sufficient if the search warrant contains such reasonable description as will enable the owner or caretaker of said property to know just what property is referred to therein. When said search warrant is issued it will authorize the person to whom it is issued to be accompanied by peace officers, and said search warrant will authorize the person to whom it is issued to be also accompanied by as many helpers and assistants as he may deem necessary for the performance of said duty or the exercise of said authority. Any person, firm, or corporation who shall refuse to permit any person to whom said search warrant is issued to make said entry or to perform any duty or exercise any authority designated in said search warrant under authority of this Act, or who shall refuse to permit any peace officer or any helper or any assistant to said person to whom said search warrant is issued to make said entry or to exercise any authority or perform any duty designated in said search warrant under authority of this Act shall be fined not less than Twenty-five nor more than One Hundred Dollars. Each separate day upon which said refusal is made during the thirty days next succeeding the date of the issuance of said search warrant shall constitute a separate offense. Said search warrant shall permit the entry and re-entry and the performance of said duties and exercise of said authority continuously for

> **a period of thirty days after its is-
> suance, and additional search warrants
> may be issued thereafter under the pro-
> visions of this Act as often as may be
> necessary.** It is further provided that
> it shall not be necessary for veterin-
> arians, inspectors or members of said
> Commission to secure said search war-
> rants, unless they are to be accompanied
> by peace officers, but they are hereby
> authorized to make entries upon private
> and public lands for the performance of
> any duties authorized under this Act.
> Search warrants may also be issued to
> inspectors of the Live Stock Sanitary
> Commission engaged in the eradication
> of scabies among sheep, goats, and cat-
> tle, whenever said inspectors are to be
> accompanied by peace officers in the per-
> formance of any duties in connection with
> said work." (Emphasis supplied through-
> out this opinion)

The right of the people of Texas to be se-
cure in their persons, houses, papers and possessions
against unreasonable searches and seizures is guar-
anteed to them by the Fourth Amendment to the Consti-
tution of the United States and by Article 1, § 9, of
the Constitution of Texas.

We set out Article 1, § 9, of the Constitu-
tion of Texas, as follows:

> "The people shall be secure in
> their persons, houses, papers and pos-
> sessions, from all unreasonable seiz-
> ures and searches; and no warrant to
> search any place, or to seize any per-
> son or thing shall issue without des-
> cribing them as near as may be, nor
> without probable cause, supported by
> oath or affirmation."

The protection afforded by the Fourth Amend-
ment of the Constitution of the United States is ap-
plicable only to searches and seizures made by the
United States Government or its officers or agencies.
Hammond Packing Co, v. State, 212 U. S. 322, 29 S.
Ct. 370, 53 L. Ed. 530; Weeks v. U. S., 232 U. S. 383,
34 S. Ct. 341, 58 L. Ed. 652; National Safe Deposit

v. Stead,232 U. S. 58, 34 S. Ct. 209, 58 L. Ed. 504.

Therefore, we are confronted with resolving the issue of whether the search warrant in question, which authorizes entry and reentry for thirty days after its issuance contemplates an unreasonable search and seizure within the inhibition of the Constitution of Texas, Art. 1, § 9.

It was the fear of unbridled and arbitrary searches and seizures, as perpetrated by colonial revenue officers armed with Writs of Assistance, that prompted the authors of our Federal and State Constitutions to draft a positive assurance that the abuse occasioned by the issuance of general search warrants, which flourished during the period of colonial development, should never recur.

Inherent in our jurisprudence is the principle enunciated so clearly by Lord Chatham and quoted in Ex Parte Gould, 60 Tex. Cr. R. 442, 132 S. W. 364, as follows:

"The poorest man may, in his cottage, bid defiance to all the forces of the crown. It may be frail; its roof may shake; the wind may blow through it; the storm may enter; the rain may enter; but the king of England may not enter; all his forces dare not cross the threshold of the ruined tenement."

We must, therefore, carefully examine Section 6 of Article 1525b,V.P.C., wherein it provides for obtaining a search warrant, to determine whether it is reasonable or unreasonable in the light of the authorities and the statutory and constitutional precepts.

It must be observed initially that Article 1525b, Section 6, V.P.C., is a particular authority for a search warrant to be used in connection with the administration of the duties of the Live Stock Sanitary Commission. Were it not for the passage of such section, a search warrant would have to be obtained under the authority of Title 6 of the Code of Criminal Procedure, which applies to search warrants generally and would be governed by the provisions of Article 317, V.C.C.P., which follows:

"Any peace officer to whom a search
warrant is delivered shall execute it with-
out delay, and forthwith return it to the
proper magistrate. It must be executed
within three days from the time of its is-
suance, and shall be executed within a
shorter period if so directed in the war-
rant by the magistrate."

There is much authority to the effect that
under a search warrant obtained under a statute which
authorizes but one execution, and therefore one entry,
reentry of the premises at a later date and reinstitu-
tion of a search under authority of the original search
warrant is illegal, and renders the evidence obtained
thereby inadmissible. Davis v. State, 113 Tex. Cr. R.
421, 21 S. W. (2d) 509; Rippy v. State, 122 Tex. Cr.
R. 101, 53 S. W. (2d) 619; Coburn v. State, 78 Okla.
Cr. R. 362, 148 P. (2d) 483; State v. Moran, 103 W.
Va. 753, 138 S. E. 366; "Search and Seizure" by Corn-
elius, 2nd Ed., Section 224, page 530.

We are, however, confronted in this instance
with a statute authorizing entry and reentry for a per-
iod of thirty days under a search warrant, which is to
be used only in connection with the administration and
enforcement of duties imposed in the Act designed to
provide safeguards and controls over diseased live stock
and domestic fowls. It becomes pertinent to examine
that statute to observe what are the duties and the au-
thority with which the peace officer will be associated,
as this will cast light on the "reasonableness" of the
search under such search warrant.

Section 1 of Article 1525b, V.P.C., indicates
that the Live Stock Sanitary Commission shall "protect
all cattle, horses, mules, asses, sheep, goats, hogs,
and other live stock, and all domestic animals and domes-
tic fowls of this State from infection, contagion or ex-
posure to the infectious, contagious and communicable di-
seases enumerated in this Section, to-wit: Tuberculosis,
anthrax, glanders, infectious abortion, hemorrhagic septi-
cemia, hog cholera, malta fever, foot and mouth disease,
rabies and other similar and dissimilar contagious and
infectious diseases of live stock recognized by veteri-
nary profession as infectious or contagious; also rabies
among canines, and Bacillary White Diarrhea among fowls
. . . It shall be the duty of the Commission. . . to

establish **quarantines** within the State of Texas on
cattle, horses, mules, asses, sheep, goats, hogs and
other live stock, domestic animals and domestic fowls,
also counties, districts, areas, premises, lands, pas-
tures, lots, ranches, farms, fields, ranges, thorough-
fares, buildings, barns, stables, stock yards, pens
and other places whenever said Commission ascertains
that any of said diseases or the agency of transmis-
sion thereof exist in any of said places or among any
of said live stock, domestic animals or domestic fowls,
or that any of said places, live stock, domestic ani-
mals, or domestic fowls are exposed to any of said
diseases or to the germs or agency of transmission of
any of said diseases. . ."

Section 2 of the statute provides, in part:

"Whenever it is determined by Veter-
inarians in the employ of the Live Stock
Sanitary Commission that any contagious,
infectious, or communicable disease exists
among any live stock or domestic animals
or domestic fowls, in the State of Texas,
or on any land or premises or other places,
or that any live stock, domestic animals
or domestic fowls, premises or other places
have been exposed or are exposed to the
agency of transmission of any infectious,
contagious or communicable disease, such
exposure or infection shall be considered
as <u>continuing</u> until the Live Stock Sanitary
Commission has eradicated the same through
its prescribed methods under authority of
law and of the rules and regulations of the
Live Stock Sanitary Commission. . . ."

Section 3 of the statute provides for the es-
tablishment of **quarantines** to prevent the spread of ani-
mal diseases, and Section 4 provides, in part, that any
person who shall "ship, drive, drift, lead, haul, truck,
carry or in any manner move or transport" any animals
from any "county, district, area, premises, pasture, lot,
pen, yard, stock yard, field, barn, stable, building,
enclosure, or other place which is under quarantine"
shall be guilty of a misdemeanor.

Section 5 provides for the further establish-
ment of quarantines prohibiting the movement of animals
which are <u>disease carriers,</u> and provides that anyone

violating such section shall be guilty of a misdemeanor.

Section 9 provides for the obtainment of a health certificate from a veterinarian recognized by the Live Stock Sanitary Commission for any of the animals covered by the statute which are moved into Texas, and provides that anyone violating such section shall be guilty of a misdemeanor.

Section 11 provides that cattle moved into Texas, except range or stocker cattle, or cattle shipped for immediate slaughter, shall be accompanied by a tuberculin test chart, and provides that anyone violating such section shall be guilty of a misdemeanor.

Section 12 provides for the vaccination and dipping of hogs in accordance with specified standards, and provides that anyone violating such section shall be guilty of a misdemeanor.

Sections 13 and 14 provide for the testing of cattle for tuberculosis, the branding of those cattle found to have a positive reaction, and the quarantine of such cattle found to have tuberculosis.

Section 14 specifically provides, in part:

" . . . Any person, firm or corporation who shall sell, trade, barter, give away, or loan, or drive, drift, ship, haul, lead, truck, or in any manner move, before the Live Stock Sanitary Commission has established a quarantine on said positive reactors, any of said positive reactors from the enclosure wherein they were located at the time they were so tested, or that shall so move any of said reactors from the place or enclosure where they are under quarantine by said Commission or that shall so move any cattle located in said quarantined place or enclosure during the existence of said quarantine without first securing a written permit from the said Commission" shall be guilty of a misdemeanor.

Section 16 provides for the regulation of live stock exhibitions, shows and fairs, and provides that anyone violating such section shall be guilty of a misdemeanor.

Section 21 provides for the compulsory burial or burning of the carcasses of animals that died of contagious or infectious diseases, and provides that anyone violating such section shall be guilty of a misdemeanor.

We set out various provisions of the Act to show the multitude of duties imposed on the Live Stock Sanitary Commission and its employees, and the numerous offenses that may be committed under the statute.

It is a comprehensive act covering much of the field of live stock and domestic fowl regulation and control. One need be but slightly familiar with the many animal diseases, the control of which is covered by the Act, to realize that such control requires continuing and constant supervision and observation, and that without such supervision and observation the enforcement of the statute would be hindered. The live stock which have been exposed to disease may take days before they show symptoms of the disease that may be diagnosed.

It is provided in the Constitution of Texas, Art. 16, § 23, that:

"The Legislature may pass laws for the regulation of live stock. . . ."

The function, then, of the peace officer who will accompany the veterinarian in conducting the search under the search warrant authorized by Section 6 of Article 1525b, V.P.C., is that of enforcement, as in his capacity as a peace officer he is clothed with authority to make arrests. Enforcement of the statute is an essential to its effective administration. The "reasonableness" of a search and seizure, under such a search warrant which authorizes entry and reentry for thirty days after its issuance, must be determined in the light of what is to be accomplished by such authorized activity.

In view of the fact that the search warrant authorized by Section 6 of Article 1525b, V.P.C., is so clearly allied with the full and adequate administration of the act, we think a search properly instituted and performed under the authority of a search warrant complying with the provisions of that statute would not be unreasonable and would not be violative of the provisions of Article 1, § 9, of the Constitution of Texas. This, of course, assumes that

such search warrant is in full compliance with the constitutional provisions requiring "probable cause", the description of the premises to be searched and the supporting oath or affirmation, each of which is essential to the validity of the search warrant, and each of which must be governed by the facts peculiar to the situation in question.

We think it not inappropriate to note the case of Armstrong v. Whitten, 41 F. (2d) 241, decided by the Federal District Court for the Southern District of Texas. Judge Hutcheson, in this case, was passing on the validity of Article 1525c, V.P.C., as a police measure, which statute provided for fever tick eradication, under the regulation of the Live Stock Sanitary Commission, and the administration of which was closely associated with Article 1525b, V.P.C. Incidentally, Section 24 of Article 1525c, V.P.C., provides for obtaining a search warrant similar to that under Article 1525b, V.P.C., but in the tick-eradication statute the search warrant is effective for sixty days. In that case, which sustained the validity of Article 1525c, V.P.C., the Court observed:

". . . It seems to me now, however, that the paramount consideration in this case is that the Legislature has undertaken, by a comprehensive scheme, to eradicate the fever tick, and that all the provisions of the act are designed for, and should be considered in the light of, that purpose; . . .

". . . The Legislature, having full power to do so, has undertaken by a comprehensive scheme, a valid and constitutional purpose, to-wit: to eradicate the fever-carrying tick from the cattle of this State, and that all the provisions of the act are designed and measured to that end.

"That the Legislature has the right to institute and carry out methods of tick eradication under the general police powers of the state, and, that especially under the provisions of Article 16, Section 26, of the Constitution it has the right to require plaintiff and others similarly situated to take such measures, adopt such precautions, and put into

operation such activities as will at least constitute a good-faith endeavor to free the state of the menace and burden at which the law is aimed, that, this being so, plaintiff's bill presents no equity for relief, and his prayer for injunction should be denied."

## SUMMARY

The provisions of Article 1525b, Section 6, Vernon's Penal Code, which authorizes the issuance of a search warrant permitting entry and reentry thereunder for a period of thirty days after issuance when a peace officer shall accompany a veterinarian employed by the Live Stock Sanitary Commission in exercising the authority conferred by that statute, are valid, and a search properly instituted and conducted under authority of a search warrant which fully complies with such statute would not be unreasonable, as a matter of law, within the inhibition of Article I, Section 9, of the Constitution of Texas. The "reasonableness" of such warrant depends upon the facts of each situation.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By

Dean J. Capp,
Assistant

APPROVED:

FIRST ASSISTANT
ATTORNEY GENERAL.

DJC:jmc:rt:jmc